TOSTE FARM CORPORATION and PaineWebber, Inc., Custodian/Trustee of IRA FBO Carl Acebes, account numbered #JG12642–69, Plaintiffs,

v.

HADBURY, INC., Richard N. Morash and Raymond C. Holland, Jr., as Escrow Agent, Defendants.

Civ. A. No. 93–0015 P.

United States District Court, D. Rhode Island.

April 5, 1995.

242

John H. Blish, Blish & Cavanagh, Providence, RI, for plaintiffs.

John W. Ranucci, Providence, RI, for defendants.

## OPINION AND ORDER
### (JURISDICTION)

PETTINE, Senior District Judge.

The plaintiffs bring this Declaratory Judgment action pursuant to 28 U.S.C. §§ 2201–2202 and Rule 57 of the Federal Rules of Civil Procedure. They seek a declaration of the parties' rights and duties under a Limited Partnership Agreement ("Agreement"), the Toste Farm Limited Partnership, effective November 4, 1991.

The defendants deny that the Court has subject matter jurisdiction. In their answer to the complaint, they move that the action be dismissed and counterclaim for damages and injunctive relief. For the reasons that follow, the Court dismisses the plaintiffs' claim and the defendants' counterclaim for lack of jurisdiction.

### I.

The parties and entities involved in the controversy are Toste Farm Corporation, Inc. ("TFCI"), a Rhode Island corporation; Toste Farm Corporation ("TFC"), a New York corporation; PaineWebber, Inc. ("PaineWebber"), a Delaware corporation with a principal place of business in New York; Hadbury, Inc. ("Hadbury"), a Rhode Island corporation; Raymond C. Holland, Jr. ("Holland"), a Rhode Island citizen; Richard N. Morash ("Morash"), a Massachusetts citizen; and Carl Acebes ("Acebes"), a New York citizen.

On November 4, 1991, PaineWebber, as the custodian/trustee of Acebes' IRA Account, and TFCI (collectively "Acebes partners") entered into a limited partnership with Hadbury and Morash (collectively "Morash partners") for the purpose of acquiring and developing certain property located in Rhode Island.

In July 1991, pursuant to the terms of the partnership agreement, Acebes announced that he wished to retire from the Agreement. On September 8, 1992, as provided in the Agreement, a buy-sell procedure was conducted between the parties at the office of Raymond C. Holland, Jr., a Rhode Island attorney and named escrow agent under the Agreement, whereby each could bid for the partnership interest of the other. The bidding ended in a dispute which need not be discussed for the purpose of resolving this threshold issue of jurisdiction; it suffices to say each party claimed to have acquired ownership of the other's partnership interest.

On October 7, 1992, TFC was incorporated as a New York corporation with PaineWebber as the trustee and sole shareholder. To resolve their bidding dispute, on November 5, 1992, the Acebes partners, in the form of TFCI and PaineWebber as Trustee, filed an action in this Court against the Morash partners and Holland, as escrow agent. In response, the Morash partners filed a motion to dismiss under Fed.R.Civ.P. 12 for lack of diversity jurisdiction, contending that TFCI was a Rhode Island corporation. Soon thereafter, TFCI and PaineWebber filed a notice of voluntary dismissal under Fed.R.Civ.P. 41(a), and dismissal was entered by this Court.

On December 10, 1992, TFCI was merged into TFC and a Certificate of Merger was filed with the New York Department of

State. On January 6, 1993, a Certificate of Merger of TFCI, as filed in New York, was filed with the Office of the Rhode Island Secretary of State. The plaintiffs allege, "TFC was the surviving corporation and the separate existence of TFCI ceased as of December 11, 1992. All of the assets of TFCI were merged with and vested in TFC." Pls.' Mem. of Law on the Issue of Diversity Jurisdiction at 3.

As accurately recited by the defendants, "[o]n January 12, 1993, Acebes refiled his action in this Court, this time in the form of Toste Farm Corporation and PaineWebber, alleging Plaintiff Toste Farm Corporation to be a New York corporation and successor by merger to Toste Farm Corporation, Inc., and again alleging jurisdiction to lie with this Court under diversity of citizenship." Post Trial Br. of Defs. on Issues of Jurisdiction at 2. The defendants filed a counterclaim. As it now stands, the plaintiffs are Toste Farm Corporation, a New York corporation, and PaineWebber, as the custodian/trustee of Acebes' account, a Delaware corporation, with a principal place of business in the State of New York. The defendants are Hadbury, Inc., a Rhode Island corporation; Morash, a Massachusetts citizen; and Holland, a Rhode Island citizen. There is no question that the amount in controversy exceeds the sum or value of $50,000, exclusive of interest and costs. If diversity jurisdiction does indeed exist, the parties do not question that Rhode Island is a proper forum for this litigation.

The defendants' position is that Toste Farm Corporation lacks standing to sue because the merger of the Rhode Island corporation into the New York corporation constitutes a breach of Section 11.2 of the Agreement. This section prohibits a partner from selling, transferring or disposing of any part or all of his partnership interest to a third party without first notifying the other partners in writing, setting forth all the details of the proposed transfer or sale. The defendants further contend that the merger was effectuated solely to manufacture diversity and "that the purposeful bringing of this action though [sic] manufactured diversity constitutes maintenance as well as a fraud upon this Court, and that Acebes, through

entities under his control, was guilty of bad faith in the formation and the performance of his agreement with Morash." Post Trial Br. of Defs. on Issues of Jurisdiction at 2–3.

The plaintiffs concede that one of the purposes of the merger was to create diversity between the parties to this action. However, they also state another motivation was to serve the administrative convenience of Carl Acebes, "whose other businesses and the professionals who service them, were all citizens of New York. (Testimony of Carl Acebes, Sept. 20, 1994, pp. 23–24). See also testimony of Peter Olberg, Sept. 13, 1994, p. 173 ('It was considered wise to move the situs of the corporation to New York as other corporations that Mr. Acebes owns are.')." Pls.' Mem. of Law on the Issue of Diversity Jurisdiction at 4.

Because there is so little First Circuit case law directly relevant to the jurisdictional issues discussed in this Opinion and Order, I originally issued a tentative opinion and submitted it to the parties for further briefing. I have carefully analyzed the briefs and amended the tentative opinion accordingly.

## II.

The plaintiffs' argument is simple and straightforward. The plaintiffs acknowledge that TFCI, the non-diverse corporation, was merged into TFC, the New York corporation to create diversity among the parties. However, they contend that the diversity issue raised by the defendants is irrelevant because effecting a merger for the exclusive purpose of bringing a diversity action in this Court is not a proscribed procedure. See Greater Development Co. v. Amelung, 471 F.2d 338 (1st Cir.1973) (per curiam). See also Rodriguez–Diaz v. Sierra–Martinez, 853 F.2d 1027, 1029 (1st Cir.1988). The plaintiffs note that the valid merger of two corporate entities destroys the existence of one and creates an entirely separate entity in the form of the consolidated or surviving corporation; in other words, one is "completely absorbed" into the other. See Sheldon v. Kimberly–Clark Corp., 105 A.D.2d 273, 276, 482 N.Y.S.2d 867 (N.Y.App.Div.1984). The end result is that the surviving corporation becomes a citizen of the merger state; the

non-survivor ceases to exist. *See Hoefferle Truck Sales, Inc. v. Divco–Wayne Corp.*, 523 F.2d 543, 548 (7th Cir.1975) (noting that "the proposition that separate corporations lose their separate identity after merger is too evident for much discussion"). *See also Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 671 (9th Cir.1986); *Exxon Corp. v. Duval County Ranch Co.*, 406 F.Supp. 1367, 1369 (S.D.Tx.1975). Because the facts existing at the time of the commencement of the action govern the determination of diversity of citizenship, and because the plaintiffs brought this action after the merger, the plaintiffs conclude that diversity exists. *See Taber Partners I. v. Merit Builders, Inc.*, 987 F.2d 57, 59 n. 1 (1st Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993); *Media Duplication Servs. v. H.D.G. Software*, 928 F.2d 1228, 1236 (1st Cir.1991); *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991).

The defendants, of course, argue that the merger did not create valid diversity jurisdiction. Certainly 28 U.S.C. § 1332(a) provides, in pertinent part, as follows:

(a) The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different states....

However, 28 U.S.C. § 1359 states:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise has been improperly or collusively made or joined to invoke the jurisdiction of such court.

The defendants build their opposition to a finding of diversity jurisdiction on the language recited in *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2d Cir.1976):

Section 1359 should [ ] be construed broadly to bar any improper attempt to create federal diversity jurisdiction. The scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated corporations since common ownership or the control by one of the other

only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of the assignment.

546 F.2d at 475. The court, therefore, "starts with the presumption against diversity jurisdiction, and the burden of proof is upon the party asserting it to affirmatively sustain it." Post Trial Br. of Defs. on Issues of Jurisdiction at 4 (citing *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir.1962), *cert. denied*, 372 U.S. 928, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963)).

█ There are two different situations in which transfer of a claim may be used to create diversity. The first situation is where the original party transfers, or assigns, a legal claim to a diverse third party but still continues its original business. The critical factual issue in this situation is whether the assignment of the claim was a bona fide transfer to another interested party or whether the original party in fact retained an interest in the claim. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490–91, 23 L.Ed.2d 9 (1969) (noting that if federal jurisdiction based on diversity could be created by collusive assignments "which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties"); *Haskin v. Corporacion Insular de Seguros*, 666 F.Supp. 349, 354 (D.P.R.1987) (motive should be "given less weight than the determinations of whether the assignment was real or colorable and, most important, whether or not the assignee has some independent, pre-existing legitimate interest in the causes of action assigned to him"); *Blythe Indus. v. Puerto Rico Aqueduct and Sewer Auth.*, 573 F.Supp. 563, 564 (D.P.R. 1983) (no diversity is created where the claims were assigned solely to create jurisdiction and with no legitimate business purpose apart from the creation of such jurisdiction); and *Henley & Co. v. Miller Golf Equip. Corp.*, 300 F.Supp. 872, 875–76 (D.P.R.1969) (diversity may be created by assignments which are "real," "actual," "bona fide," "absolute," "not feigned," and "in the

regular course of business," whereas diversity may not be created by assignments which are "manufactured," "fictitious," "merely a colorable device," or which create a "mere collection agency").

■ The second situation is where the original party transfers its entire business to another state and ceases to exist at all in the original state. In essence, the corporation changes its state citizenship, through merger or complete transfer and dissolution. Just as individuals can create diversity by moving to another state, a corporation may dissolve itself and reincorporate in another state in an attempt to create federal subject matter jurisdiction that otherwise could not exist. *See Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.*, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928); *Amelung,* 471 F.2d 338.

■ It is the second situation, where the original party transfers its *entire* business to another state and ceases to exist in the original state, which is at issue in this case. Whether jurisdiction has been created does not depend upon the genuineness of the transfer but upon the genuineness of the new corporation. The First Circuit recognizes that a corporation can reincorporate in another state, solely for the purposes of gaining diversity as taught in *Black & White Taxicab,* 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (valid creation of diversity jurisdiction where ongoing taxicab business was reincorporated out-of-state). However, the First Circuit has determined that there is no diversity jurisdiction where, in order to create diversity, a corporation conducting an ongoing business transfers all its assets and its business to another corporation and then dissolves itself *where the claim which is the basis of the suit is the only asset transferred and becomes the only asset of the new corporation, which has no payroll or other activities. Amelung,* 471 F.2d at 339.

■ *Amelung* stands generally for the proposition that "when a corporation conducting an on-going business transfers all its assets and its business to another corporation, and the transferor is dissolved, diversity jurisdiction will exist, even though the shareholders of the two corporations are the same, and the purpose of the transfer is to obtain diversity of jurisdiction." 471 F.2d at 339. However, it cannot be said that *Amelung* stands for the proposition that a merger done exclusively to create diversity is proper under *all* conditions. While *Amelung* does not directly state that motive is a relevant consideration in cases of merger, it is consistent with its holding that where a corporation is not engaged in any on-going business and the motive for merger is *solely* to create diversity jurisdiction, the attempt to create jurisdiction is improper, and a federal court shall not have jurisdiction pursuant to section 1359.[1]

It follows that this case rests on the factual determination of what was actually "transferred" and all the facts and circumstances surrounding the merger. It seems to me that if the only asset that the New York corporation acquired by merger was the claim which is the subject of this suit, and if that claim is the only asset of TFC, then *Amelung* requires this Court to dismiss for lack of jurisdiction. If TFC engages in an ongoing business, however, diversity jurisdiction may exist even though the merger was undertaken exclusively to create diversity. *See Black & White Taxicab,* 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681.

With this background, I will analyze the facts, for therein lies the answer to the problem.

### III.

There is no need to detail the testimony that supports the conclusion that at least one of the reasons for the merger of TFCI into

---

1. Plaintiffs argue that *Amelung* clearly states that "a motive to obtain diversity jurisdiction *is expressly* permissible when the transfer is not by assignment but by merger." (emphasis in original). They conclude that "[w]hile inquiry into the motive of the transfer might be appropriate in an 'assignment' case, it has no relevance in the 'merger' situation as presented here." Pls.' Mem. of Law in Opp'n to the Ct.'s Tentative Op. and Order at 5, 7.

However, *Amelung* states no such positive rule; in fact, *Amelung* merely notes that diversity *may* be found in some instances *although* the motive for merger is to create diversity.

TFC was to create diversity—this is, as it must be, conceded by the plaintiffs. The tough question is whether TFC was nothing more than a vehicle for pursuing this lawsuit in federal court.

Determining whether or not jurisdiction lies with this Court requires an analysis of the true nature and activities of Paine-Webber as the custodian/trustee of Acebes' IRA account, TFC, TFCI, and Acebes. PaineWebber, as the sole shareholder of TFC and TFCI, is nothing more than the alter ego of Acebes. Thus, Acebes, in effect, was the sole owner of TFC and TFCI, that is, the sole shareholder. Acebes, of New York, decided he wanted to venture into a land development project in Rhode Island, that is, the Toste Farm deal; to do this, on advice of his attorneys and contrary to his own inclinations, TFCI was incorporated as a Rhode Island corporation. He, Acebes, was advised "that there would be no difference whether [the corporation] was set up in Rhode Island or New York." Post Trial Br. of Defs. on Issues of Jurisdiction, App. at 88 (citing Transcript). To form TFCI, Acebes had his custodian/trustee, PaineWebber, transfer $200,000 to the TFCI entity which in turn invested approximately $12,000 in the partnership. For some reason not discernible from the record, TFC, the New York corporation, was later formed. At the time of its formation, it had no assets. Following the formation of TFC, Acebes decided to sue the Morash partners and did so in Rhode Island through TFCI and PaineWebber as the custodian/trustee. There being no diversity, the action was dismissed. Acebes was then advised by his attorneys to transfer all the assets of TFCI to TFC and thus create the essential diversity to give this Court jurisdiction. In reality, Acebes is the suing party through his various entities. He engaged in a round robin, shifting his money and interest in and out of his various pockets. The shares of stock as issued emphasize that only one person, Acebes, was involved. Acebes owned whatever assets TFCI had as well as the TFC assets. In other words, as the defendants argue "in consideration of the merger, Acebes received what he already controlled." Post Trial Br. of Defs. on Issues of Jurisdiction at 6.

Actually, the only new assets TFC acquired were a "chose in action, i.e., the right to bring a lawsuit to determine its interest, if any, in the limited partnership," Post Trial Br. of Defs. on Issues of Jurisdiction at 6, and some amount of money less than $200,000. Testimony of Carl Acebes, Sept. 20, 1994 at 24–25. The chose in action is *the claim which is the basis of the suit.* Neither TFC nor TFCI was an ongoing business with a payroll or any of the accouterments of an ongoing business engaged in any other activities.

Because there is, in fact, an asset in addition to the chose in action, that is, approximately $200,000, the issue becomes whether this situation is more analogous to that in *Black & White Taxicab* or in *Amelung.* I find that this factual situation more closely approximates that in *Amelung.*

In *Black & White Taxicab,* a corporation conducting an ongoing business transferred all of its assets and business by merger. The Supreme Court held that the transfer properly created diversity jurisdiction although the transfer was effected solely to create diversity jurisdiction. In *Amelung,* a corporation not engaged in any ongoing business was acquired by the plaintiff and the original corporation was subsequently dissolved. There, the suit was "the only asset of the new corporation, which apparently [had no payroll and no other activities." *Amelung,* 471 F.2d at 339. Thus, the only asset transferred to the new corporation was the chose in action that was the basis of suit. The court concluded that transfer under these circumstances was an "improper assignment to manufacture federal diversity jurisdiction in violation of 28 U.S.C. § 1359." *Amelung,* 471 F.2d at 339. The court stated that to "extend an already eroded case like *Black and White* ... to this situation would be to destroy the meaning of this salutary and long-standing statute." *Amelung,* 471 F.2d at 339.

It is true that here, unlike the situation in *Amelung,* there was an asset, in addition to the chose in action, that was "transferred" in the TFCI–TFC merger. However, the mere presence of funds is an insufficient basis for

distinction from *Amelung.* As was true of the corporation in *Amelung,* TFC lacks the ongoing business, with a payroll and other activities, of the corporation in *Black & White Taxicab.*[2]

■ Section 1359's policy against improper or collusive manufacture of diversity jurisdiction would be completely undermined if a corporate merger involving a transfer of the chose in action and some amount of money could create diversity jurisdiction. If such a transfer of funds were sufficient to create diversity jurisdiction, a corporation could flout the holding and underlying principles of *Amelung* by simply transferring $10 in addition to the chose in action to the new corporation. Such an outcome hardly seems permissible.

■ I therefore conclude that the TFCI–TFC merger, while real enough, did not create diversity jurisdiction. This result is a logical extension of the First Circuit's holding in *Amelung.*

■ Additionally, it is consistent with *Amelung* to find that motive is relevant in the absence of an ongoing business. As noted above:

> The scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated corporations since common ownership or the control by one of the other only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of the assignment.

*Prudential Oil Corp.,* 546 F.2d at 475. Although *Prudential Oil* involved the assignment of a single claim solely for the purpose of prosecuting the same in the context of two ongoing corporations, its principles are applicable to the instant case. Here, Acebes, through his custodian/trustee, was the sole shareholder of TFCI. Although TFCI is technically dissolved, Acebes retained an in-

terest in the outcome of the suit and continued to control the litigation. While it is true that corporate entities are separate and distinct from their individual shareholders, section 1359 does not permit the manipulation of corporate entities to create improperly diversity. Piercing the corporate veil, I find that there has been a manufactured assignment concocted and designed by a single individual using the diversity statute as a ploy to create jurisdiction. The merger was real enough, but I find it did not create diversity jurisdiction.

## IV.

### *THE COUNTERCLAIM*

The defendants, who have now prevailed in their argument that this Court is without jurisdiction over the plaintiffs' claims argue that, nevertheless, there is jurisdiction for the purposes of their counterclaim against the plaintiffs.

With respect to jurisdiction over counterclaims:

> [I]t generally is agreed that if the court determines that there is no basis for federal jurisdiction over plaintiff's claim, then it cannot proceed to adjudicate a compulsory counterclaim that does not have an independent jurisdictional basis.

6 C. Wright, A. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1414 at 112 (2d ed. 1990). *See Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 291 (5th Cir.1989) (citations omitted).

The defendants offer a clever and provocative argument in support of the existence of an independent jurisdictional basis for their counterclaim. In rough outline, they contend that they have a valid breach of contract claim against the plaintiffs premised on section 11.2 of the partnership agreement. When the merger was completed, TFCI ceased to exist. Under Rhode Island Gener-

---

**2.** Plaintiffs implication that TFC was engaged in an ongoing business because the funds transferred "were earmarked for 'other business opportunities' in which TFC might become engaged" is unpersuasive. Pls. Mem. of Law in

Opp'n to the Ct.'s Tentative Op. and Order at 4. There is no evidence that TFC ever engaged in any business activity other than to maintain this lawsuit.

al Law section 7–1.1–69,[3] which must be applied in this case, the New York corporation, TFC, now possesses all the assets of TFCI and stands in the place of TFCI for purposes of suit. Thus, the defendants of Rhode Island and Massachusetts must counterclaim against the plaintiffs of New York. It follows that there is complete diversity between the defendants and the plaintiffs; therefore, the counterclaim of the defendants is properly before this Court.

The plaintiffs counter by asserting that Section 11.2 of the Agreement was not violated. The arguments they offer in support of this position are relevant only to a determination of whether or not Section 11.2 was breached. As to the jurisdictional issue, the plaintiffs reason that if the Court were to exercise jurisdiction over the counterclaim alone, it would lead to a multiplicity of actions or the loss of the plaintiffs' claim altogether. The plaintiffs argue that to reject TFC's status as a New York corporation for the purposes of the plaintiffs' claim, but to accept the New York status for the purposes of adjudicating the defendants' counterclaim is wholly inconsistent with the principles of 28 U.S.C. § 1367 (supplemental jurisdiction), Fed.R.Civ.P. 13 (counterclaim and cross-claim), and *Amelung* itself.

▮ The undisputed fact is that TFCI ceased to exist; only TFC, a separate and distinctly different entity, remained and its existence is in a diverse state. It cannot be denied that the defendants in their counterclaim sue TFC of New York. However, I am persuaded that in this case there is no principled basis upon which to find diversity jurisdiction over the defendants' counterclaim but not over the plaintiffs' original claim.

28 U.S.C. § 1367 provides, in pertinent part:

The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.... 28 U.S.C. § 1367(a). It also states that the district court may decline to exercise supplemental jurisdiction if one of the following situations exist:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Because I have determined that this Court does not have jurisdiction over the plaintiffs' claim, I would have to find an independent basis for jurisdiction over the counterclaim in order to exercise jurisdiction over the defendants' counterclaim. 6 Wright, Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1414 at 112.

To find that TFC is a New York corporation for diversity purposes with respect to the counterclaim, where I have already determined that it is not a diverse entity with respect to the claim hardly seems to provide the foundation for an "independent jurisdictional basis." The defendants would have this Court find that the very same attempt to create diversity jurisdiction by merger which did not properly create diversity for the plaintiff's original claim is an *independent* basis of jurisdiction for their counterclaim. In the absence of First Circuit case law, I can only conclude that the defendants' pro-

3. **7–1.1–69. Effect of merger or consolidation.**
   (b) When a merger or consolidation has become effective:
   (4) The surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal, and mixed, and all debts due on whatever account, including sub-

scriptions to shares, and all other choses in action, and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in the single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of the corporations shall not revert or be in any way impaired by reason of the merger or consolidated.

posed basis for jurisdiction over the counterclaim does not confer jurisdiction upon this Court.

In addition, assuming, *arguendo,* that this Court could properly exercise jurisdiction over the counterclaim, it is within the purview of section 1367 to decline jurisdiction in exceptional circumstances where there are compelling reasons to do so. Here, if I were to exercise jurisdiction over the counterclaim, the defendants' claim would be decided by this Court while the plaintiffs' claim, based upon the same facts, would eventually be decided by a different court. This result is inconsistent with the efficiency policy behind Rule 13, which requires a defendant to bring any counterclaim arising out of the transaction that is the subject matter of the plaintiffs' claim in the same action. Although it might be argued that the solution to this efficiency concern is for the Court to exercise original jurisdiction over the counterclaim and supplemental jurisdiction over the original claim, such a result would confound the purpose of section 1359 and undermine this Court's finding that the merger was an improper attempt to create diversity. Due to this "exceptional circumstance," I would decline jurisdiction over this case even if such jurisdiction existed.

## CONCLUSION

For the foregoing reasons, I dismiss the plaintiffs' claim and the defendants' counterclaim for lack of jurisdiction.

SO ORDERED: