USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1506 TOSTE FARM CORPORATION, ET AL., Plaintiffs, Appellees, v. HADBURY, INC., ET AL., Defendants, Appellants. ______________________ No. 95-1544 TOSTE FARM CORPORATION, ET AL., Plaintiffs, Appellants, v. HADBURY, INC., ET AL., Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Lynch, Circuit Judge, _____________ Aldrich and Campbell, Senior Circuit Judges. _____________________ ____________________ John Blish with whom Stephen J. Reid, Jr., Raymond A. Marcaccio __________ _____________________ ____________________ and Blish & Cavanagh were on brief for plaintiffs.  ________________ John William Ranucci for defendants. ____________________ ____________________ December 4, 1995 ____________________ CAMPBELL, Senior Circuit Judge. These cross ______________________ appeals are from orders of the United States District Court for the District of Rhode Island dismissing the respective claims of plaintiffs and defendants for lack of subject matter jurisdiction. Toste Farm Corp. v. Hadbury, Inc., 882 _________________ _____________ F. Supp. 240 (D.R.I. 1995). Plaintiffs are two entities wholly controlled by Carl Acebes, namely, Toste Farm Corporation ("TFC") and PaineWebber, Inc. Custodian/Trustee of IRA FBO Carl Acebes, account numbered JG12642-69 ("PaineWebber IRA"). Defendants are Richard N. Morash and his corporation Hadbury, Inc. ("Hadbury").1 At issue is whether the court below correctly concluded that diversity jurisdiction over the plaintiffs' claim failed for violation of 28 U.S.C. 1359, and whether, in the circumstances, diversity jurisdiction over defendants' counterclaim also failed. We affirm the district court's dismissal of both claims.  I. I. Factual Background Factual Background In June of 1991, Richard Morash obtained the exclusive right to acquire 417 acres of land in Rhode Island known as Toste Farm. Intending to purchase and develop the  ____________________ 1. Raymond C. Holland, Jr., an attorney and Rhode Island citizen, was also named as a defendant in the district court. However, he has not appealed from the orders below. -2- property, Morash and Carl Acebes, on November 4, 1991, formed the Toste Farm Limited Partnership composed of the "Morash Partners" and the "Acebes Partners." The Morash Partners consisted of Hadbury, an entity incorporated under the laws of Rhode Island with a principal place of business in Massachusetts, and Morash, a Massachusetts citizen. The Acebes Partners consisted of PaineWebber IRA, an entity incorporated under the laws of Delaware with a principal place of business in New York, and Toste Farm Corporation, Inc. ("TFCI"), a corporation newly formed under the laws of Rhode Island with a principal place of business in Rhode Island.2  According to Carl Acebes, TFCI was formed "for a single purpose -- to act as a general partner of the Toste Farm Limited Partnership." Acebes' attorney stated that TFCI's "principal asset" was its partnership interest and added that TFCI "may have had an incidental bank account as well." TFCI was capitalized with a bank account valued at a little over $200,000, of which about $12,000 was invested in the partnership. Acebes gave two reasons for overfunding TFCI. First, he wanted to avoid having to request additional funds from PaineWebber IRA in the event the thinly  ____________________ 2. TFCI was later merged into TFC, a plaintiff in this case. The sole stockholder of both corporations was Acebes' PaineWebber IRA account, which was itself a partner of Toste Farm Limited Partnership and also a plaintiff in this action. -3- capitalized partnership required cash. Second, the extra funds were available for "other business opportunities . . . quite outside of the . . . partnership."3 During 1992, Acebes announced his intention to retire from the partnership. Pursuant to the partnership agreement, Morash and Acebes conducted a buy-sell procedure in which each party bid to purchase the partnership interests of the other. This procedure ended in a dispute with each party claiming to have purchased the other's interests.  In November of 1992, the Acebes Partners brought an action against the Morash Partners and Raymond Holland, the attorney for the partnership, in the District Court for the District of Rhode Island seeking a declaration of the parties' rights and duties under the partnership agreement. See 28 U.S.C. 2201-2202; Fed. R. Civ. P. 57. They ___ asserted diversity jurisdiction pursuant to 28 U.S.C. 1332, but later voluntarily dismissed the suit when the Morash Partners pointed out that the parties were not fully diverse because plaintiff TFCI, like defendants Hadbury and Holland, was a citizen of Rhode Island.4  ____________________ 3. Acebes also asserted that TFC, the successor to TFCI, "has bid on other real estate and has prepared to bid on real estate located in Massachusetts."  4. The citizenship of a corporation is determined pursuant to 28 U.S.C. 1332(c)(1), which provides:  "[A] corporation shall be deemed to be a citizen of any State by which it has been -4- In December of 1992, TFCI was merged into TFC, a New York corporate shell that had been created earlier in the year. Presumably, TFC's principal place of business also became New York, rather than Rhode Island where TFCI was based, although the record is not absolutely clear.5 Pursuant to the merger, TFC received all of TFCI's assets. Plaintiffs concede that one purpose of creating TFC and dissolving TFCI was to manufacture diversity for this action, although they also contend, without specifics, that the merger served the administrative convenience of Acebes whose residence and other business activities were in New York. Defendants allege that the merger was effected solely to create diversity in this action. Having created diversity via the merger, TFC and PaineWebber IRA refiled their action in January of 1993. Defendants filed a counterclaim. During the trial, defendants moved to dismiss for lack of jurisdiction. The district court dismissed both the claim and the counterclaim for lack of subject matter jurisdiction after the trial on the merits.  ____________________ incorporated and of the State where it hasits principalplace ofbusiness . . . ." TFCI and Hadbury were citizens of Rhode Island because they were incorporated under the laws of Rhode Island. 5. TFC's certificate of incorporation states: "The office of the Corporation in the State of New York is to be located in the County of New York, State of New York."  -5- II. II. This court reviews de novo the legal question of whether the district court had subject matter jurisdiction over the parties' claims. Murphy v. United States, 45 F.3d ______ _____________ 520, 522 (1st Cir. 1995). However, the district court's factual findings made in conjunction with its jurisdictional determination receive deference unless clearly erroneous. Dweck v. Japan CBM Corp., 877 F.2d 790, 792 (9th Cir. 1989). _____ _______________ The district courts have original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $50,000. 28 U.S.C.  1332(a). Diversity must be complete: the citizenship of each plaintiff must be shown to be diverse from that of each defendant. Owen Equip. & Erection Co. v. Kroger, 437 U.S. ___________________________ ______ 365, 373-74 (1978). For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state where it is incorporated and the state where it maintains its principal place of business, 28 U.S.C. 1332(c)(1), and citizenship is determined as of the date of the commencement of the lawsuit. See, e.g., Taber Partners, I v. Merit ___ ____ __________________ _____ Builders, Inc., 987 F.2d 57, 59 n.1 (1st Cir.), cert. denied, ______________ ____________ Desarrollos Metropolitanos, Inc. v. Taber Partners, I, ___ ________________________________ __________________ U.S. ___, 114 S. Ct. 82 (1993); Rodriguez-Diaz v. Sierra- ______________ _______ Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988). The burden of ________ proof is on the party attempting to sustain diversity -6- jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942); _______ _______ Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 ________________________________ ___________________ F.2d 1228, 1235 (1st Cir. 1991).  It is undisputed that plaintiffs satisfied the requirements of 1332. By the time this action was brought, TFCI had effectively merged into TFC, a New York corporate citizen. Defendants, however, sought dismissal of plaintiffs' claim under 28 U.S.C. 1359, which provides: A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court. The district court held that 1359 barred jurisdiction  not only over plaintiffs' claim but over the entire action including defendants' counterclaim. The court reasoned that although "[t]he merger was real enough, . . . it did not create diversity jurisdiction" because there was "a manufactured assignment." Toste Farm, 882 F. Supp. at 247.  __________ For over a century, Congress has denied jurisdiction of suits where a party is "improperly or collusively made or joined to invoke . . . jurisdiction."6  ____________________ 6. Section 5 of the Act of March 3, 1875, a predecessor to 1359, stated: . . . if in any suit commenced in a circuit court [which then had original diversity jurisdiction] . . . it shall appear to the satisfaction of said circuit court, at any time after such -7- The Supreme Court in Williams v. Nottawa, 104 U.S. 209, 211 ________ _______ (1881), described transfers to create diversity jurisdiction as "frauds upon the court." Commentators and courts have construed "improper or collusive" as "confer[ring] jurisdiction not justified by aims of diversity." O'Brien v. _______ AVCO Corp., 425 F.2d 1030, 1034 (2d Cir. 1969); 14 Charles A. __________ Wright, Arthur R. Miller & Edward D. Cooper, Federal Practice and Procedure: Jurisdiction 2d 3637, at 93 (1985 & Supp. 1995). See also Airlines Reporting Co. v. S and N Travel, _________ ______________________ ______________ 58 F.3d 857, 862 (2d Cir. 1995) ("[W]e construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction"); Amoco Rocmount Co. __________________ v. Anschutz Corp., 7 F.3d 909, 916 (10th Cir. 1993); Yokeno _______________ ______ v. Mafnas, 973 F.2d 803, 809 (9th Cir. 1992) ("The federal ______ anti-collusion statute is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into federal courts"); Nolan v. Boeing Co., 919 F.2d 1058, 1067 (5th Cir. 1990), _____ ___________ cert. denied, 499 U.S. 962 (1991). The district court in the ____________ present case found that "Section 1359's policy against  ____________________ suit has been brought . . . that the parties to said suit have been improperly or collusively made or joined, . . . for the purpose of creating a case cognizable . . . under this act; the said circuit court . . . shall dismiss the suit. Act of March 3, 1875, c. 137, 5, 18 Stat. 470. -8- improper or collusive manufacture of diversity jurisdiction would be completely undermined if a corporate merger involving a transfer of the chose in action and some amount of money could create diversity jurisdiction." Toste Farm, __________ 882 F. Supp. at 247. In its most recent pronouncement, the Supreme Court has construed 1359 in a similarly broad manner. In Kramer ______ v. Caribbean Mills, Inc., 394 U.S. 823 (1969), the Court _______________________ noted that "Kramer candidly admits that the 'assignment was in substantial part motivated by a desire ... to make diversity jurisdiction available.'" Id. at 828. Holding ___ that the otherwise valid assignment of the claim to a diverse party was improper or collusive under 1359, the Court reasoned that the mere legality of an assignment cannot make it valid for purposes of federal jurisdiction because such a ruling "would render 1359 largely incapable of accomplishing its purpose." Id. at 829. The Court was ___ concerned that "the ease with which a party may 'manufacture' federal jurisdiction" could lead to "a vast quantity of ordinary contract and tort litigation . . . channeled into the federal courts" which is "the very thing which Congress intended to prevent when it enacted 1359 and its predecessors." Id. at 828-29.  ___ In applying Kramer, lower courts have often ______ determined an improper or collusive assignment from whether -9- or not the parties have shown an independent business justification for assigning the claim to a diverse party.7 Courts have also applied elevated scrutiny to assignments between affiliated parties. In these situations, "[s]imply articulating a business reason is insufficient; the burden of proof is with the party asserting diversity to establish that the reason is legitimate and not pretextual." Yokeno, 973 ______ F.2d at 810. See also Airlines Reporting, 58 F.3d at 862-63; ________ __________________ Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, __________ _____________________________________________ S.A., 20 F.3d 987, 991-93 (9th Cir. 1994); Dweck, 877 F.2d ____ _____ at 792-93; Prudential Oil Corp. v. Phillips Petroleum Co., ____________________ _______________________ 546 F.2d 469, 475 (2d Cir. 1969) ("The scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of  ____________________ 7. See Western Farm Credit Bank v. Hamakua Sugar Co., 841 F. ___ ________________________ _________________ Supp. 976, 981 (D. Haw. 1994) ("[O]nce a party has stated a legitimate business purpose for the assignment and has shown the assignment is absolute, district courts need not explore whether one motivating factor behind the assignment was to create diversity jurisdiction"); Baker v. Latham Sparrowbush _____ __________________ Assocs., 808 F. Supp. 992, 1002 (S.D.N.Y. 1992) (assignment _______ for "facially valid business purpose" not collusive or improper); AmeriFirst Bank v. Bomar, 757 F. Supp. 1365, 1372 _______________ _____ (S.D. Fla. 1991); Blythe Indus., Inc. v. Puerto Rico ____________________ ______________ Aqueduct and Sewer Auth., 573 F. Supp. 563, 564 (D.P.R. 1983) ________________________ (diversity jurisdiction denied where "[n]o legitimate commercial interest is apparent from the assignment"). But ___ see Haskin v. Corporacion Insular de Seguros, 666 F. Supp. ___ ______ _______________________________ 349, 354 (D.P.R. 1987) ("In examining a Section 1359 claim of collusion . . . motive must be considered but given less weight than the determinations of whether the assignment was real or colorable and, most important, whether or not the assignee has some independent, pre-existing legitimate interest in the causes of action assigned to him"). -10- assignments between related or affiliated corporations since common ownership . . . only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of the assignment"); Western Farm Credit Bank v. Hamakua Sugar Co., ________________________ _________________ 841 F. Supp. 976, 981 (D. Haw. 1994); Blythe Indus., Inc. v. ___________________ Puerto Rico Aqueduct & Sewer Auth., 573 F. Supp. 563, 564 ____________________________________ (D.P.R. 1983).  The above authorities, as well as the clear language of 1359, are consistent with the district court's analysis here. Plaintiffs rely, for a contrary view, upon a Supreme Court case decided in the 1920s that seemingly points in a different direction. In Black & White Taxicab & __________________________ Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 _____________ _______________________________________ U.S. 518 (1928), a Kentucky taxi company created diversity by reincorporating in Tennessee. Otherwise, the company continued its taxi business in Kentucky.8 The newly created  ____________________ 8. When Black & White Taxicab was decided a corporation was ______________________ considered a citizen of the state in which it was incorporated, regardless of the location of its principal place of business. This definition of citizenship allowed corporations to change citizenship very easily, as Black & _______ White Taxicab demonstrates. The enactment of 28 U.S.C.  _____________ 1332(c) in 1958 redefined the citizenship of a corporation to include the state where its principal place of business is located, in addition to the state in which it is incorporated. Thus, today, a corporation with its principal place of business in Kentucky could not create diversity jurisdiction with a Kentucky opposing party by merely reincorporating in Tennessee. Its principal place of business would also have to move away from Kentucky, a more difficult feat for an active business. -11- Tennessee company brought suit in federal court. The Supreme Court upheld diversity jurisdiction stating: "The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction." Id. at 524. ___ Cf. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 190 ___ _____ _________________________ (1931); Cross v. Allen, 141 U.S. 528, 533 (1891). _____ _____ Black & White Taxicab has been sharply criticized ______________________ for allowing the manufacture of diversity in conflict with  1359's purpose. Charles A. Wright, Law of Federal Courts 373 (1994) ("The reincorporation . . . to create diversity verged on fraud, and it was not necessary to hold that diversity jurisdiction could be so readily abused"); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 159 (1969) ("One of the most cited examples of improper creation of diversity jurisdiction involved a corporation which simply reincorporated in another state for the purpose of creating diversity jurisdiction [citing Black & White Taxicab]").  _____________________ This court has interpreted 1359 in light both of Black & White Taxicab and Kramer in a case strikingly similar _____________________ ______ to the one at hand. Greater Dev. Co. v. Amelung, 471 F.2d ________________ _______ 338 (1st Cir. 1973) (per curiam). In Amelung, the district _______ court dismissed the original claim of a Massachusetts  ____________________  -12- corporation for lack of jurisdiction. To create diversity, the corporation's controlling stockholder formed a Connecticut shell corporation which purchased the assets of the Massachusetts corporation. The Connecticut corporation then refiled the suit. The district court dismissed the action relying on 1359, and this court summarily affirmed, stating in part: [W]e think . . . that when a corporation conducting an on-going business transfers all its assets and its business to another corporation, and the transferor is dissolved, diversity jurisdiction will exist, even though the shareholders of the two corporations are the same, and the purpose of the transfer is to obtain diversity of citizenship. Here admittedly the transfer is real, the transferor has been dissolved and the shareholder is the same. However, the claim which is the basis of this suit was the only asset transferred, and, as far as the record shows, the only asset of the new corporation, which apparently has no payroll and no other activities. To extend an already eroded case like Black _____ & White, see Kramer . . . to this _________ ___ ______ situation would be to destroy the meaning of this salutary and long-standing statute [28 U.S.C. 1359]. -13- Id. at 339.9 Amelung has been praised for refusing to ___ _______ extend Black & White Taxicab beyond its facts.10  _____________________ In the instant case, the district court concluded that the factual situation "approximates that in Amelung." _______ Toste Farm, 882 F. Supp. at 246. We agree. As in Amelung, ___________ _______ the principal asset transferred was a legal claim. As the district court found, TFCI had no employees nor did it have ongoing activities beyond its interest in the Toste Farm Limited Partnership. It was formed for the single purpose of acting as a general partner in the partnership. After Acebes determined to leave the partnership and the buy-sell negotiations foundered, resulting in this lawsuit, TFCI and, after the merger, TFC were left mainly with a legal dispute. Unlike the transferred taxi business in Black & White _______________ Taxicab, there was no ongoing business to operate separate _______  ____________________ 9. Another court has taken a similar approach to that in Amelung. In Piermont Heights, Inc. v. Dorfman, 820 F. Supp. _______ ______________________ _______ 99, 100 (S.D.N.Y. 1993), the District Court for the Southern District of New York held: "If a plaintiff assigns a claim or takes a similar action [in this case a merger] solely for the purpose of manufacturing diversity jurisdiction, and without a legitimate business purpose apart from the creation of such jurisdiction, [section 1359] is violated."  10. 14 Charles A. Wright, Arthur R. Miller & Edward D. Cooper, Federal Practice and Procedure: Jurisdiction 2d  3638, at 99 (1985) ("The approach taken in the Amelung case _______ seems sound . . . . To ignore the obvious purpose behind what had been done, as some language in the Black & White ______________ Taxicab case . . . could be read as requiring, would be _______ contrary to the objectives of Section 1359 and inconsistent with the principle that federal courts are courts of limited jurisdiction") (footnotes omitted). -14- from the legal claim. Had TFCI assigned its interest in the claim to TFC in New York, 1359 would plainly, under Kramer, ______ have overridden the existing diversity. We see no reason for a different outcome merely because the merger route was used to accomplish essentially the same result. Section 1359 proscribes the improper or collusive making of a party to invoke jurisdiction, "by assignment or otherwise" (emphasis ____________ added). It is true, as plaintiffs argue, that the assets transferred to TFC included besides the partnership interest a bank account containing under $200,000. While plaintiffs concede that one purpose of the merger was to manufacture diversity, they note the availability of the bank account for possible future investments and contend that the transfer to New York served Acebes' convenience, as his other business activities were also in New York. But, on this record, the district court could reasonably view these assertions as make-weights. Acebes would scarcely be deeply concerned as to where the state of incorporation and principal office of this paper corporation were located, given that there were no employees and no ongoing operations. Nor does the placing of an amount of cash in TFC for possible future use seem significant. The record does not indicate the existence of active outside business investments at the time of transfer. None of these factors, by themselves, -15- suggests a likely reason for the move to New York. The significant reason appears to be the improper one: "to invoke the jurisdiction" of the federal court, 1359. The district court justifiably concluded that there was "a manufactured assignment concocted and designed by a single individual using the diversity statute as a ploy to create jurisdiction." Toste Farm, 882 F. Supp. at 247. To __________ be sure, the court elsewhere said that creating diversity was "at least one of the reasons for the merger," id. at 245, but ___ the tenor of the court's opinion, including the "manufactured assignment" statement, indicates that the creation of diversity was the principal indeed, one might suppose the sole purpose for the merger. There was no error in this factual analysis. We recognize, as plaintiffs argue, that the Supreme Court, in the circumstances of Black & White Taxicab, ________________________ declined to inquire into motives. Id. at 524. Black & White ___ _____________ Taxicab, however, involved the transfer of an ongoing taxi _______ business, not a paper corporation whose single purpose had been to act as a general partner in a partnership now embroiled in litigation. Viewing cases of this nature on a continuum defined by Kramer on one side, and Black & White ______ _____________ Taxicab on the other, the present case falls well to the _______ Kramer side. And in this circuit the instant case is further ______ controlled as the district court correctly found by our -16- Amelung decision. We, therefore, affirm the district court's _______ finding that 1359 bars jurisdiction over plaintiffs' claim. III. III. We turn next to the issue of whether any portion of defendants' counterclaim can survive the jurisdictional failure of plaintiffs' claim.  There are two ways for district courts to acquire jurisdiction over counterclaims: (1) pursuant to an independent basis for federal jurisdiction present in the counterclaim; or (2) pursuant to 28 U.S.C. 1367 which provides supplemental jurisdiction over counterclaims that are part of the same case or controversy as the original claim. Only those counterclaims that have an independent basis for jurisdiction can survive a dismissal of the original claim for lack of jurisdiction.11 6 Charles A. Wright, Arthur R. Miller, Mary K. Kane, Federal Practice and Procedure: Civil 2d 1414, at 112 (1990). See also Scott ________ _____ v. Long Island Savings Bank, FSB, 937 F.2d 738, 743 (2d Cir. ______________________________ 1991); Kuehne & Nagel (AG & CO) v. Geosource, Inc., 874 F.2d ________________________ _______________ 283, 291 (5th Cir. 1989); DHL Corp. v. Loomis Courier Serv., _________ _____________________ Inc., 522 F.2d 982, 985 (9th Cir. 1975).  ____  ____________________ 11. Supplemental jurisdiction, 28 U.S.C. 1367, is, in effect, derivative of the original claim's jurisdiction and thus cannot survive the jurisdictional failure of the original claim.  -17- Defendants urge this court to find that the district court has mandatory jurisdiction over Count III of their counterclaim because jurisdiction exists independently within the scope of its allegation.12 Count III alleges that the TFCI-TFC merger violated sections 11.2 and 11.3 of the partnership agreement, which prohibit the transfer of a partner's interest without giving notice and a right of first refusal to the other partners. Defendants argue that the district court has mandatory jurisdiction over Count III because they have met all the requirements of diversity under 1332. Section 1359 which destroyed diversity in plaintiffs' claim does not apply to them, defendants say, because they themselves did not engage in the collusive or improper acts that defeated diversity jurisdiction over plaintiffs' claim. In defendants' view, the district court's holding penalizes them for losing "the race to the courthouse" since if they had sued plaintiffs, instead of vice versa, jurisdiction would exist.   ____________________ 12. Defendants' counterclaim consists of three counts: Count I requests a declaration of rights under the partnership agreement; Count II requests injunctive relief instructing the parties to abide by the rights and duties of the partnership agreement; Count III requests damages for an alleged breach of the partnership agreement. The parties agree that Counts I and II must be dismissed because they are not independent of plaintiffs' claim, and therefore do not survive that claim's jurisdictional failure.  -18- We are not persuaded. Section 1359, by its terms, destroys diversity not only for the original claim, but for the entire action. Section 1359 provides: "A district court shall not have jurisdiction of a civil action in which any ____________ ___ party . . . has been improperly or collusively made . . . to _____ invoke [federal] jurisdiction" (emphasis added).13 The district court's lack of jurisdiction is not limited to the claim of a collusive plaintiff but extends to any portion of the civil action whose jurisdictional basis depends in fact upon the plaintiff's improper or collusive act.14 We can see no reason not to construe the statute as written. It could well be unfair, within the contours of the same lawsuit, to find that diversity jurisdiction exists for purposes of defendants' claim after dismissing plaintiffs' claim for want of diversity. To bifurcate jurisdiction in this manner would be to fragment the case. One aspect of the partnership agreement here might have to be determined in  ____________________ 13. The term "action" has been used in the Federal Rules of Civil Procedure to include counterclaims. See Fed. R. Civ. ___ P. 54(b) ("When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim ______ ____________ or third party claim, ... the court may direct the entry of a [partial] final judgement ...") (emphasis added). 14. We do not reach the question of whether 1359 would require dismissal of a counterclaim supported by a jurisdictional basis that would have existed even if plaintiffs had not improperly manufactured jurisdiction. -19- federal court and another in state court,15 causing friction between state and federal courts, the wasting of judicial resources, and a greater likelihood of unfair and inconsistent outcomes. It could also be unfair to allow defendants, who successfully challenged jurisdiction over plaintiffs' claim, to use the same improperly achieved jurisdictional basis for their counterclaim. In any case, the statute seems clear. We affirm the district court's refusal to assert jurisdiction over defendants' counterclaim. Affirmed. Each party bears its own costs.  Affirmed. Each party bears its own costs. __________________________________________  ____________________ 15. Defendants argue that it is not at all clear that the case would be bifurcated because if they are successful in Count III and the federal court awards them TFCI partnership interest as a remedy, they would have control over the partnership and plaintiffs' claim would be moot. We are not persuaded by this argument because it is unclear whether defendants would be successful and whether the district court would award TFC's partnership interest to defendants as a remedy in the event that they were successful.  -20-