COLUMBIA GAS TRANSMISSION
CORPORATION, Plaintiff–
Appellee,

v.

Deana DRAIN, Defendant–Appellant.

No. 98–2091.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1999.

Decided Sept. 8, 1999.

**ARGUED:** Paul Joseph Harris, National Property Rights Center, Richmond, Virginia, for Appellant. Tamara Jean DeFazio, Furbee, Amos, Webb & Critchfield, Fairmont, West Virginia, for Appellee. **ON BRIEF:** Kenneth R. Miller, Furbee, Amos, Webb & Critchfield, Fairmont, West Virginia; Harry Clair Bruner, Jr., Columbia Gas Transmission Corporation, Charleston, West Virginia, for Appellee.

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

Vacated and remanded by published opinion. Judge LUTTIG wrote the majority opinion, in which Judge HAMILTON joined. Judge ERVIN wrote an opinion concurring in the judgment.

## OPINION

LUTTIG, Circuit Judge:

Deana Wingfield Drain appeals from the judgment of the United States District Court for the District of West Virginia granting Columbia Gas Transmission Corporation a declaration that it is entitled to a fifty-foot easement over her property and a permanent injunction prohibiting her from encroaching on that easement. Finding that the lower court lacked subject matter jurisdiction over Columbia's claim, we vacate the judgment and remand with instructions to dismiss.

### I.

Deana Wingfield Drain owns .44 acres in Randolph County, West Virginia. She obtained the property by deed from her father, Oliver Leroy Wingfield, in 1977.

In 1950, Columbia Gas, through its predecessor-in-interest Cumberland and Allegheny Gas Company, purchased from Mr. Wingfield's predecessors-in-interest, members of the Currence family, a right-of-way to lay, maintain, operate, repair, and remove an eight-inch gas pipeline under the subject property. The right-of-way agreement specifies the length of the right-of-way as "1139 feet or 69 rods," for which Cumberland and Allegheny compensated the grantors at a rate of $1.50 per rod per family member. The agreement does not specify the width of the right-of-way. After securing the right-of-way, Columbia's predecessor-in-interest installed an underground gas transmission pipeline along the property as contemplated by the agreement.

In 1965, Mr. Wingfield, who had subsequently purchased the land, installed a cement block foundation and constructed a shed six inches from Columbia's gas line. There the structure remained for nearly

thirty years without prompting any objection from Columbia. Over that same period, Columbia also did not object to a number of similar encroachments by nearby property-owners at other locations along the line. In August 1992, Ms. Drain began work to install a cement block foundation for a modular home along Columbia's right-of-way. The foundation was within seven and one-half feet of the pipeline. Although Columbia had employees on the property while the foundation was being dug, it again offered no objection. By October 1992, the work had been completed and the modular home installed.

Six months later, in April 1993, Columbia informed Ms. Drain that it owned a fifty-foot easement (twenty-five feet on either side) along the right-of-way, and that her modular home encroached on that easement. On June 27, 1994, the company informed Ms. Drain for the first time that she would have to move her modular home to a location twenty-five feet from the pipeline, and several days later threatened legal action if she refused to do so. On December 6, 1994, Columbia Gas brought an action in federal district court seeking a declaration that under West Virginia law and federal regulations the right-of-way agreement entitled it to a fifty-foot easement over the Drain property, and preliminary and permanent injunctions ordering Ms. Drain to move her home and shed twenty-five feet from the pipeline and prohibiting her from conducting any further construction on the pipeline or otherwise interfering with Columbia's claimed easement.

In July 1995, Ms. Drain did move her home and shed from the easement, but also filed an Answer and Counterclaim to the complaint. In her answer, Ms. Drain raised both a challenge to the court's jurisdiction and a number of defenses on the merits. In her counterclaim, she sought

declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983, on the grounds that recognition of a fifty-foot easement would result in an unconstitutional taking of her property.

The district court concluded that West Virginia law governed the question of the easement's width and that under that state's law Columbia was entitled by virtue of its express agreement to a "reasonably necessary" easement, which after a bench trial the court determined to be fifty feet. The district court granted Columbia the permanent injunction and declaratory relief it sought on these state law grounds, while exercising its equitable powers to order Columbia to pay Ms. Drain's house-moving expenses, and held that there had been no unconstitutional taking of Ms. Drain's property. Ms. Drain appeals.

## II.

Drain renews before this court her argument that the district court lacked subject matter jurisdiction over what she claims is nothing more than a standard state law action to enforce an easement over her property. The district court, after noting that it could not hear what it termed a "typical state court action ... absent some basis for Federal jurisdiction," and before resolving that complaint on purely state law grounds, identified the requisite basis for federal jurisdiction not in the statute pursuant to which the action was brought, the Natural Gas Pipeline Safety Act, 49 U.S.C. § 60101 *et seq.*,[1] but rather through "a natural extension of the Court's jurisdiction" under a different federal statute, the Natural Gas Act, 15 U.S.C. § 717f(h). Because neither the Natural Gas Pipeline Safety Act nor the Natural Gas Act, read separately or, as appellee would have us do, *"in pari materia,"* creates federal-question jurisdiction over this quintessential state law claim, and because we can

---

**1.** The action was actually brought pursuant to the Natural Gas Pipeline Safety Act, 49 U.S.C. § 1671 *et seq.*, which had been repealed on July 5, 1994, and reenacted at 49 U.S.C. § 60101 *et seq.* on the same date. For ease of reference, we will refer to the Act as reenacted and codified at 49 U.S.C. § 60101 *et seq.*

find no other basis for the district court's jurisdiction, we vacate the judgment and remand with instructions to dismiss.

### A.

■ In its action for injunctive and declaratory relief, Columbia argued that jurisdiction for its claims lay under the Natural Gas Pipeline Safety Act. That act, intended as its title suggests to ensure the safe functioning of natural gas pipelines and facilities, imposes certain safety obligations on pipeline operators and empowers the Secretary of Transportation to issue regulations establishing minimum safety standards. The Act also authorizes the Attorney General, on behalf of the Secretary of Transportation, to bring civil actions to enforce the provisions of the Act or regulations prescribed thereunder, *id.* § 60120, and private persons to bring actions in federal district court to enjoin their violation, *id.* § 60121(a). Thus, it is clear that the Natural Gas Pipeline Safety Act does create a cause of action—to enjoin violations of or compel compliance with its terms— and federal jurisdiction to hear it. That does not mean, however, that the Act creates *this* cause of action or jurisdiction to hear *it.* And, indeed, it does not.

■ For although appellee is, as it argues, a "person" under the Act, and therefore entitled to seek injunctive relief for violations thereof, the Act and the regulations prescribed pursuant to it are silent as to rights-of-way and easements, the subject of this action. In fact, appellee has not alleged a violation on Ms. Drain's part of the only duty the Act imposes on private land-owners like her—that they utilize a special "one-call notification system" prior to engaging in an activity that could threaten the safety of a pipeline facility, *id.* § 60114. Because appellee has not alleged any violations by appellant of "the chapter

or a regulation prescribed or order issued under" it, *id.* § 60121, its cause of action is revealed, as the district court explicitly recognized, as nothing more nor less than a "typical state action" to enforce an easement to which Columbia claims it is entitled by express agreement. And, as the district court also correctly recognized, as did appellee at oral argument on appeal, the Natural Gas Pipeline Safety Act simply does not by its terms create jurisdiction over such a claim.[2]

■ Although appellee relied in its complaint only on the Natural Gas Pipeline Safety Act as the basis for jurisdiction, the district court adverted to the Act's explicit statement of the non-exclusivity of its remedies, *see id.* § 60121(d) ("A remedy under this section is in addition to any other remedies provided by law. This section does not restrict a right to relief that a person or a class of persons may have under another law or at common law."), and found a jurisdictional basis in the Natural Gas Act, 15 U.S.C. § 717 *et seq.* In this latter Act, Congress, among other things, created a comprehensive regulatory scheme over matters relating to the transportation of natural gas and its sale in interstate and foreign commerce, assigned regulatory responsibilities to the Federal Energy Regulatory Commission, and imposed a number of significant burdens on businesses engaged in such transportation and sale. *Id.* Congress provided the federal district courts with "exclusive jurisdiction of violations of this chapter or the rules, regulations and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation or order thereunder." *Id.* § 717(u). Most importantly for purposes of our analysis, in section 717f(h) of the Act Congress authorized natural gas pipeline operators to ac-

---

**2.** In addition, even were we to find that appellee has alleged a violation of the Act, section 60121(a)(1)(A) requires persons bringing an action under the Act to provide 60 days

notice to the Secretary of Transportation, or to the appropriate state agency, prior to filing suit, notice which appellee concedes was not given in this case.

quire by eminent domain in the district courts the rights-of-way necessary to operate and maintain their pipelines when they cannot acquire the same by contract or are unable to agree with a property-owner on an appropriate compensation, so long as the amount claimed by the owner of the property to be condemned exceeds $3,000.

The district court grounded its determination of federal-question jurisdiction in this last provision of the Natural Gas Act. Reasoning that a federal court cannot properly adjudicate claims of eminent domain without considering the extent and location of the necessary easement, the district court held that the "natural extension" of section 717f(h) provides an adequate basis for federal jurisdiction in an action to determine the size of an easement even absent the statutory predicate of a claim to eminent domain. Because we do not believe that section 717f(h), or indeed any provision of the Natural Gas Act, can be read to establish a right to a federal forum for an action to determine the location and scope of an easement created by express agreement, we cannot affirm a finding of federal-question jurisdiction that rests on these grounds.

Section 717f(h) states, in pertinent part, that

> [w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line ... it may acquire the same by the exercise of the right of eminent domain in the district court. . . .

The district court is doubtless correct that the power to determine the extent and location of that right-of-way "necessary" to the pipeline's construction, operation, and maintenance is itself a necessary incident of the court's jurisdiction under section 717f(h) to grant the right of eminent domain. But we do not agree that it "naturally" or even logically follows from this conclusion that section 717f(h) also allows the district court to assume jurisdiction over a disputed easement under state law *absent* the very eminent domain action the section explicitly contemplates.

It bears reminding that Columbia has *not* brought an eminent domain action, for understandable reasons. To do so would require, *a fortiori*, a concession by the gas company that it does not already own by express agreement the easement it claims it needs for the safe operation and maintenance of its line. Such an admission, while clearing the way for the condemnation action contemplated by the section, would of course require Columbia to compensate the defendant for the loss of the productive use of her property. This result, while perfectly consistent with the design of the section, would not comport with Columbia's apparent objective of obtaining its easement through declaratory and injunctive relief and without additional cost. Rather than petition the district court to authorize condemnation, as the provision explicitly allows, the company asks the district court instead to declare that it already owns the necessary right-of-way. This the statute does not authorize. We decline to read a provision that authorizes the district court to act where a party *cannot* obtain a right-of-way by agreement also to create jurisdiction over a party's claim not merely that it *can* do so, but that it already has.

Even if we somehow had authority "naturally" to extend the jurisdiction of the federal courts beyond the limitations imposed by the statute's plain language, we would decline to do so here. The allocation of property rights among contracting parties is a paradigmatic question of state law, and one that is within the particular expertise of our state courts. Congress, in enacting section 717f(h), gave no indication that it intended to displace the state courts from their traditional role in resolving common law property disputes that do not implicate the district court's diversity jurisdiction. The most natural reading of

section 717f(h), then, is the one that comports with its plain meaning and Congress' evident intent; namely, to ensure pipeline operators a federal forum to secure the rights-of-way necessary for safe pipeline operation where such *cannot* be obtained by resort to agreement enforceable under state law.

■ Appellee, wisely recognizing that neither the statute it advanced nor the one on which the district court relied can sustain jurisdiction, argues that the two in combination, or, as appellee says, *in pari materia*, accomplish what either alone could not. Thus, somehow, the whole of federal jurisdiction is asserted to be greater than the sum of its parts. We are not aware of caselaw establishing the proposition that federal-question jurisdiction may be found in the emanations of two statutes neither of which individually creates it, and appellee has not directed us to any. Accordingly, we must conclude that the absence of any actual provision in either statute evidencing congressional intent to create federal-question jurisdiction over appellee's state law property claim is dispositive.

### B.

■ Although in its complaint appellee limited its claim of subject matter jurisdiction to the specific federal-question jurisdiction assertedly established by the Natural Gas Pipeline Safety Act, in its appellate brief it asserts in a single sentence that general federal-question jurisdiction is established under 28 U.S.C. § 1331. To the extent that appellee's brief may be construed as arguing that this action "arises under" federal law, thus creating federal-question jurisdiction under section 1331, we reject that contention as well.

■ Section 1331 provides that

[t]he district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

It is well-established that this statutory grant of general federal-question jurisdiction is narrower than the similarly defined constitutional power. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 495, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); *International Science & Techn. Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1154 (4th Cir.1997). In the "vast majority" of cases, federal question jurisdiction exists under section 1331 only if federal law creates the plaintiff's cause of action. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). As the foregoing discussion makes clear, the plaintiff's cause of action in this case is purely a creature of state property law. The Supreme Court has long recognized, however, that federal-question jurisdiction is not limited to cases where federal law creates the cause of action. Where state law creates the cause of action, federal-question jurisdiction will nonetheless lie if the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Merrell Dow*, 478 U.S. at 808–09, 106 S.Ct. 3229; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *International Science & Tech. Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1154 (4th Cir.1997).

The only argument that can reasonably be made after *Merrell Dow* in favor of plaintiff's perfunctory claim of "arising under" federal-question jurisdiction, then, is that under West Virginia law the width of the easement will be determined by what is "reasonably necessary," and a determination of what is "reasonably necessary" turns on what actions Columbia must take in order to comply with federal safety regulations. That is to say, a determination of what is "reasonably necessary" depends upon resolution of the substantial federal question of what federal regulations require.

The Supreme Court in *Merrell Dow* was emphatic that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." 478 U.S. at 813, 106 S.Ct. 3229. Indeed, the Court recalled approvingly Justice Cardozo's "emphasis on principled, pragmatic distinctions," *id.*, in calling for

> "'something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation ... a selective process which picks the substantial causes out of the web and lays the other ones aside.'"

*Id.* (quoting *Franchise Tax Board*, 463 U.S. at 20–21, 103 S.Ct. 2841) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).

Fortunately, there are no kaleidoscopic situations here, and resolution of this claim of federal jurisdiction is possible without resort to such an accommodation of judgment. Rather, we may conclude without hesitation that appellee's presumed claim to this far less common variant of statutory "arising under" jurisdiction fails because plaintiff's right to relief does not, as the Supreme Court precedents require, necessarily depend upon resolution of any question of federal law, substantial or otherwise. That is, the determination that a fifty-foot easement is "reasonably necessary" for the safe operation and maintenance of a natural gas transmission line is one that can be, and indeed often is, reached without reference to federal law or regulations. Even in this case, the district court—after finding that it had specific federal-question jurisdiction—based its conclusion that a fifty-foot easement was necessary not on some construction of federal law or regulations, but rather on expert testimony that safety required it. Indeed, the district court considered the absence of a legitimate federal question as to the underground clearance required by law so incontestable that it took judicial notice of the fact that no federal "statute, regulation, guidance document, or policy requires a greater clearance than twelve inches for the safe operation and maintenance of a gas pipeline." Appellee does not contest this finding on appeal, and we are aware of no authority that contradicts it.[3]

Similarly, in deciding substantially identical actions brought by this same plaintiff, the courts of at least one state have almost without exception recognized as reasonably necessary the fifty-foot easement Columbia Gas seeks in this case, and in doing so have either considered federal regulations merely as one of a number of factors or, in some cases, not at all. *See Roebuck v. Columbia Gas Transmission Corp.*, 57 Ohio App.2d 217, 386 N.E.2d 1363 (1977); *Columbia Gas Transmission Corp. v. Adams*, 68 Ohio Misc.2d 29, 646 N.E.2d 923 (1994); *Columbia Gas Transmission Corp. v. Large*, 63 Ohio Misc.2d 63, 619 N.E.2d 1215 (1992). The implication of these state court decisions for our analysis is evident. What these decisions, like the district court's explicit disavowal of any reliance on federal law or regulations, make clear is that no disputed question of federal law is a *necessary* element of appellee's state law claim, the resolution of which plainly turns on interpretation of state common law as to the width of an easement obtained by express agreement where the agreement leaves that term unspecified. *See Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. 2841 (concluding that

**3.** 49 C.F.R. § 192.325(b) requires that "[e]ach main must be installed with enough clearance from any other underground structure to allow proper maintenance and to protect against damage that might result from proximity to other structures." In *Columbia Gas Transmission Corp. v. Burke*, 768 F.Supp. 1167, 1172 (N.D.W.Va.1990), the district court considered this to be the "applicable federal regulation" in concluding that a fifty-foot easement was reasonably necessary. However, the pipeline at issue in this case is, the parties agree, not a "main" but rather a "transmission line," which, pursuant to 49 C.F.R. § 192.325(a) requires only an underground clearance of "at least 12 inches."

federal-question jurisdiction is appropriate when "it appears that some substantial, disputed question of federal law is a *necessary* element of one of the well-pleaded state claims") (emphasis added). Accordingly, because federal law does not create appellee's cause of action and because "vindication of its rights under state law" does not "turn[ ] on some construction of federal law," *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229, general federal-question jurisdiction under section 1331 will not lie.

## C.

Finally, we also direct the district court to dismiss appellant's counterclaims for a declaratory judgment that the grant of a fifty-foot easement would affect an unconstitutional taking and for injunctive relief and damages pursuant to 42 U.S.C. § 1983 on the basis of this alleged constitutional violation. We recognize that it is the usual rule that a district court may exercise jurisdiction over a compulsory counterclaim after the original claim has been dismissed for lack of jurisdiction if the counterclaim has an independent basis for jurisdiction. *See, e.g., Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 646 (1st Cir.1995); *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 291 (5th Cir. 1989); *Rengo Co. Ltd. v. Molins Mach. Co., Inc.*, 657 F.2d 535, 539 (3rd Cir.1981). However, we are not aware of any case in which the district court retained jurisdiction over such a compulsory counterclaim where the plaintiffs in counterclaim have disputed the jurisdiction of the federal forum all along the way, *cf. National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 389 (3rd Cir.1973) (per curiam) (allowing a compulsory counterclaim to proceed in order to avoid "putting the plaintiff in counterclaim to the expense, effort and risk of refiling his claim"), and where the merits of the counterclaim are

inextricably intertwined with the merits of a federal defense to the plaintiff's non-federal claim.

Here, appellant raised her "unconstitutional takings" argument both as a defense to Columbia's complaint and as the basis for what we take to be compulsory counterclaims under Federal Rule of Civil Procedure 13(a) for declaratory and injunctive relief and damages.[4] It is clear from the procedural record in this case that Ms. Drain, the counterclaim plaintiff, did not seek to avail herself of a federal forum but has instead contested the district court's jurisdiction over this matter at each step of the way. To force her, by virtue of counterclaims that the federal rules of procedure compelled her to bring or risk forfeiting, *see, e.g., Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1082 (7th Cir.1979) (characterizing Rule 13(a) as a "harsh rule" that "forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them"), to remain in federal court after the original complaint has been dismissed for want of jurisdiction would be to subvert the very notions of judicial economy and fairness to the litigants that underlie this rule of procedure. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (noting the general goal of the Federal Rules of Civil Procedure as "entertaining the broadest possible scope of action consistent with fairness to the parties"); *Painter v. Harvey*, 863 F.2d 329, 333 (4th Cir.1988) ("Holding counterclaims compulsory avoids the burden of multiple trials with their corresponding duplication of evidence and their drain on limited judicial resources."). Accordingly, we instruct the district court to dismiss appellant's compulsory counterclaims without prejudice. *See Motorists Mutual Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir.1968) (refusing on the "grounds of

---

4. Federal Rule of Civil Procedure 13(a) states that:

   A pleading shall state as a counterclaim any claim which at the time of serving the

pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim....

equity and fairness" to allow a compulsory counterclaim to satisfy a jurisdictional amount in controversy requirement where defendant has objected to the federal court's assumption of jurisdiction from the beginning and only filed its compulsory counterclaim after the jurisdictional objection had been overruled).

### CONCLUSION

The judgment of the district court is vacated and the case is remanded with instructions to dismiss both the complaint and the counterclaims so that they might be brought in a proper forum.

*VACATED AND REMANDED.*

ERVIN, Circuit Judge, concurring in the judgment:

I concur only in the result announced today. I write separately to state that I do not join in the majority's rejection of federal jurisdiction over properly-pled actions for declaratory and injunctive relief under the Natural Gas Act. *See* 15 U.S.C.A. § 717 (West 1997). I too would reverse the district court in this case, but only because the plaintiff, Columbia Gas, invoked federal jurisdiction solely under the Natural Gas Pipeline Safety Act, 49 U.S.C.A. §§ 60101—60125 (West 1997 & Supp.1999), which does not authorize federal courts to adjudicate the dimensions of gas pipeline easements. On this ground I reluctantly conclude that Columbia's complaint fails to allege a sufficient basis for federal jurisdiction.

Yet I part company with the majority over its characterization of Columbia's action as a "quintessential state law claim." In recognition of the broad public interest in the safe and efficient provision of natural gas to consumers, Congress enacted the Natural Gas Act, thereby establishing a comprehensive regulatory scheme to govern all aspects of "the transportation of

natural gas and the sale thereof ...." § 717(a). A key provision of the Natural Gas Act grants pipeline operators the right to bring eminent domain actions in the federal courts when the value of the property to be condemned exceeds $3,000. *See* § 717f(h). The Natural Gas Act also instructs that "any action or proceeding ... in the district court of the United States" for that purpose "shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated...." *See id.* These two provisions of the Natural Gas Act evidence Congress' intent to create federal jurisdiction over matters related to the creation and scope of gas pipeline easements, including, as in this case, a district court's determination of the width of a gas line easement created by express agreement.*

The majority concludes that Columbia's federal cause of action is limited to a condemnation lawsuit. Yet even if Columbia were to accede to the majority's wishes and file such an action, under the majority's analysis the district court would face a conundrum: How could it determine the dimensions of any *additional* property that might be subject to condemnation when it lacks the power to determine the width of the original easement? Both determinations are necessary lest Columbia be forced to pay twice for the easement that it purchased from Drain's predecessors-in-interest in 1950.

The majority also castigates Columbia Gas for its unwillingness to compensate Drain "for the loss of the productive use of her property." This view of the facts presumes that Columbia Gas does not already own a fifty foot easement, despite uncontroverted evidence in the record that state courts routinely uphold Columbia's assertion of an easement of this width. Assuming that the majority is correct, however, under the reasoning adopted today Colum-

---

* With the exception of easement disputes over property with a value of less than $3000. *See* § 717f(h).

bia could not bring a condemnation suit in federal court to remove dangerous encroachments on its gas lines without first litigating a declaratory judgment action in the state courts. Surely Congress did not intend such a strained and paradoxical interpretation of its grant of federal jurisdiction under the Natural Gas Act.