KISER, Senior District Judge,
dissenting:
I dissent because, like the district court in its well-researched and well-reasoned opinion, I believe the case cannot be resolved without proving that the FCC’s RF radiation emission standards are too high to protect the consuming public. This conclusion stems from a reading of the plaintiffs’ complaint — not from any defense that the defendants may assert.
The majority opinion reviews in some detail what elements of the seven claims must be proved and concludes that none of the claims are dependent on whether or not the wireless telephones comply with the FCC standards. Apparently, the majority believes that the plaintiffs can prove their prima facie case of all seven claims without reference to the FCC standards regulating RF radiation emissions in wireless telephones and without proving that those standards are insufficient and invalid. I disagree. The plaintiffs are not trying this case in a vacuum. The FCC has enacted a uniform, nationwide regulatory scheme pertaining to wireless telephones which is the result of a thorough and complex rule-making process. The final rules reflect what the FCC believes will maintain the proper balance between the interest in promoting wireless communication throughout the country and the interest in protecting the health and safety of all consumers. The plaintiffs will not be able to ignore these standards. In proving their prima facie case for each claim, the plaintiffs will have to prove the unreasonableness of the RF radiation emitted by FCC-compliant wireless telephones. The plaintiffs will thus have to establish that the FCC standards are insufficient. It is well-settled that a suit to invalidate a federal regulation arises under federal law. See Cahnmann v. Sprint Corp., 133 F.3d 484, 488 (7th Cir.1998). In this case, the FCC standards’ validity vel non is a matter of plaintiffs’ proof by the very words of the complaint which purport to attack the FCC regulations. This thinly-disguised attack on the validity of the FCC standards raises a substantial federal question.
The plaintiffs attack the FCC standards in three ways. First, the plaintiffs challenge the sufficiency of the FCC standard. The plaintiffs allege that the defendants’ wireless telephones, which comply with the FCC standard, do not give adequate protection from RF radiation. Although the plaintiffs have not indicted the FCC standard by name, that is the effect of their allegations.
*460 Second, the plaintiffs challenge the expertise of the FCC. The plaintiffs allege that defendants were dishonest when they stated to the public that “cell phones fall within the safety standards of the [FCC].” ¶ 79. Plaintiffs arrive at the conclusion that the above statement is false because the defendants “omitted the fact that the FCC had declared it does not consider itself the ‘expert agency’ for evaluating health effects,” even though the FCC relied on experts in evaluating health effects, one of which was the FDA. See Cellular Phone Taskforce v. FCC, 205 F.3d 82, 88 (2d Cir.2000). This allegation is incorporated by reference in all of the plaintiffs’ claims but is particularly pertinent to Count VI (Fraud) and Count VII (Fraud by Concealment). These allegations form a part of plaintiffs’ factual basis on which these two counts are based. These are facts plaintiffs must prove along with any other alleged misrepresentations to sustain the allegations in the complaint. Therefore, the plaintiffs call into question the expertise of the FCC and the sufficiency of its standards.
Third, the plaintiffs question the procedure by which the FCC developed the regulations. Specifically, the plaintiffs challenge the data on which the FCC relied. In the rule-making process, the FCC relied in part on standards of the American National Standards Institute (“ANSI”). Id. Plaintiffs allege that the defendants “obtain[ed] and exercise[d] control over the [ANSI] Committee responsible for developing safety standards for RFR emitting devices.” ¶ 71. The plaintiffs are therefore attacking the rule-making process that the FCC used in developing these standards. Because the plaintiffs are making a direct attack upon the validity and sufficiency of the FCC regulations, their claims arise under federal law.
The majority finds that this case fails to raise a substantial federal question because it does not rise or fall on the resolution of a question of federal law. In support of this conclusion, the majority points out the holding of the Supreme Court that the “mere presence of a federal issue in a state cause of action does not confer federal question jurisdiction.” Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). The situation in Merrell Dow, however, is inapposite to the one in this case. In Merrell Dow, the plaintiffs were supporting the Federal Food, Drug, and Cosmetic Act and claiming a violation of that act was negligence. Here, the plaintiffs are seeking to completely undo the FCC standard. Claims with the potential for severely limiting or eliminating a federal regulatory scheme raise a much more substantial federal question than those that merely seek to inure to the benefit of such a scheme. On the other hand, I find this case very similar to our holding in Ormet Corp. v. Ohio Power Co. In Ormet, the plaintiffs claim was couched in traditional commercial litigation language, but we held that because the plaintiffs had to make reference to the Clean Air Act to define one of the terms of the contract there was a sufficient nexus to the Clean Air Act to support federal question jurisdiction. Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir.1996). The same logic applies here. Although the FCC regulation must be dealt with by the plaintiffs in a negative manner, its inadequacy is a fact that plaintiffs must prove. This provides a sufficient nexus to support federal question jurisdiction.
Moreover, the need for uniformity in a federal regulatory scheme heightens the importance of the federal question. In Ormet, we held that “[w]here the resolution of a federal issue in a state-law cause of action could, because of different ap *461 proaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest justifying the exercise of jurisdiction by federal courts.” Id. (citing Martin v. Hunter’s Lessee, 14 U.S. (1 Wheat.) 304, 347-48, 4 L.Ed. 97 (1816)). Here, plaintiffs are not merely raising a claim which may undermine a federal regulatory scheme through inconsistent interpretations; rather they are raising claims which, if successful, mil result in the complete invalidation of federal regulatory standards. This presents a substantial federal question.
This Court has repeated the call by Justice Cardozo for “principled, pragmatic distinctions” in determining federal question jurisdiction. Columbia Gas Transmission Corp. v. Drain, 191 F.3d 552, 558 (4th Cir.1999). In the words of Justice Cardozo, “[w]hat is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation ... a selective process which picks the substantial causes out of the web and lays the other ones aside.” Id. (quoting Gully v. First National Bank, 299 U.S. 109, 117-18, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Although we have affirmed our commitment to Justice Cardozo’s words, the majority today does not adhere to the principles espoused in these words. We should not dismiss this case as lacking federal question jurisdiction simply because the plaintiffs have filed claims cloaked in state law language. Instead, we should use common sense and recognize that plaintiffs’ claims directly implicate a federal regulatory scheme and threaten to undermine that same scheme. I would affirm the district court’s finding of federal question jurisdiction.