RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

COLUMBIA GAS TRANSMISSION, LLC,
　　　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

KANWAL N. SINGH and LYNN W. SINGH,
　　　　　　　　　　*Defendants-Appellants.*

No. 12-3419

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:11-cv-00485—Algenon L. Marbley, District Judge.

Argued: January 23, 2013

Decided and Filed:  February 7, 2013

Before:  MARTIN and ROGERS, Circuit Judges, and TARNOW, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Michael Garth Moore, LAW OFFICES OF MICHAEL GARTH MOORE, Columbus, Ohio, for Appellants.  David J. Bird, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellee.  **ON BRIEF:** Michael Garth Moore, LAW OFFICES OF MICHAEL GARTH MOORE, Columbus, Ohio, for Appellants.  David J. Bird, James M. Doerfler, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellee.

_____

### OPINION

_____

ROGERS, Circuit Judge.   This is a case about whether federal-question jurisdiction exists over disputes between nondiverse parties who disagree about the scope of existing natural gas pipeline easements.

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Columbia Gas Transmission disagrees with Kanwal N. Singh and Lynn W. Singh over the scope of an existing pipeline right-of-way. Columbia filed an action in federal district court seeking to enjoin the Singhs and their tenant from engaging in activity that Columbia believed could lead to violations of Columbia's duties under federal laws regulating natural gas service and pipeline safety. Although the cause of action appeared to be an Ohio interference-with-easement claim, Columbia's complaint referred to the Natural Gas Act, 15 U.S.C. §§ 717–717w, and regulations promulgated thereunder as a basis for federal "arising under" jurisdiction. Without explicitly addressing subject-matter jurisdiction, the district court held a status conference at which the parties reached a settlement. When the Singhs refused to comply with Columbia's understanding of the settlement, the district court granted Columbia's motion to enforce the settlement.

However, the district court did not have jurisdiction over this property dispute between nondiverse parties. Columbia's complaint neither asserts a federal cause of action nor shows that a substantial federal interest is implicated by its state-law claim. Therefore, Columbia did not properly invoke statutory "arising under" jurisdiction and the district court's judgment must be vacated.

The case centers around a property dispute in the eastern outskirts of Columbus, Ohio. In 1949, Columbia's predecessor-in-interest acquired an express easement for gas pipelines. Land records reflect that by 1960 both twenty-inch transmission pipelines at issue in this case were laid and in operation. The Singhs obtained their property on Outerbelt Street in 2004 with record notice of the right-of-way and operation of the pipelines.

On June 1, 2011, workers for Columbia saw activity on the property that raised safety concerns. According to Columbia, the "field personnel observed that unauthorized posts and a locked cable had been installed on the Property across Columbia's right-of-way for the pipelines, that dirt had been piled over the right-of-way, and that construction equipment was parked over the pipelines." Compl. ¶ 14.

Mr. Singh met with the Columbia workers at the site. Columbia made Mr. Singh aware of the pipelines and told him that he should not develop the property without first

submitting plans to Columbia. Mr. Singh questioned the existence of the easement and said that he did not need to ask for Columbia's permission but rather that Columbia needed to obtain *his* permission to be on the property. Mr. Singh informed Columbia that his tenant planned to construct an access road over the pipelines and to park trailers on the property. In addition, Columbia learned that heavy equipment had been operated within the right-of-way. According to Columbia, "[u]sing the right-of-way as a means of ingress/egress, or as a crossing, is not allowed due to load stress that could be transmitted to pipelines." *Id.* ¶ 16.

Columbia asked Mr. Singh to remove the dirt piles and construction equipment from above the pipelines and advised him of a standard Columbia document which specified uses of the right-of-way that Columbia approves of. Mr. Singh refused to accept the document or to move the dirt piles and drove away after Columbia asked him whether he made a "One-Call" request to check for the existence of the pipelines. After Mr. Singh left, Columbia saw an unused posthole that was augured within approximately a foot of one of the pipelines. Columbia decided that the ground over the pipeline needed to be dug up to ensure the pipeline's safety.

While Columbia was in the process of exposing the pipeline, Mr. Singh returned with Ms. Singh. Columbia explained the safety concerns regarding the posthole and why Columbia needed to inspect the pipeline. Mr. Singh maintained that Columbia did not have the right to be on the property and did not have permission to expose the pipeline. After Columbia insisted that it did not need his permission, Mr. Singh took some pictures and left the property. According to Columbia, the Singhs indicated that they intended to proceed with developing the property without regard for Columbia's property rights or safety concerns.

On June 6, 2011, Columbia filed a complaint and motion for a preliminary injunction in the U.S. District Court for the Southern District of Ohio. Although the cause of action is unclear, it appears to be an action for interference with easement. *See id.* ¶ 28 ("Defendants' refusal to modify their proposed use of the Property to accommodate Columbia's pre-existing legal interest over the Property has and will

substantially interfere with Columbia's lawful operation of its facilities in the right-of-way."). Columbia included a federal ingredient into its count for injunctive relief, saying "[i]f not enjoined, Defendants' actions will impair Columbia's duty to provide service under the Natural Gas Act." *Id.* ¶ 29.

Columbia asserted federal jurisdiction under the federal-question jurisdiction, 28 U.S.C. § 1331, and commerce jurisdiction, 28 U.S.C. § 1337, statutes. Columbia's complaint alleged that the "arising under" requirement of each statute could be satisfied because "this action involves substantial questions arising under federal laws, including laws regulating interstate commerce, and federal common law. Columbia's operations, including its operation of the pipeline threatened by the Defendants' actions, are subject to pervasive federal regulation under the Natural Gas Act, 15 U.S.C. §§ 717–717a, and accompanying regulations." Compl. ¶ 7.

Following a number of *pro se* filings by the Singhs, the district court set a telephonic status conference for August 10, 2011. During this conference, the Singhs were present at the district court and counsel for Columbia telephoned in. Columbia expressed its belief that most of the dispute had been resolved by the Singhs' construction of pipeline crossovers approved by Columbia. However, Columbia sought an assurance that trailers would not be parked in the right-of-way. By the end of the conference, the district court believed that an agreement had been reached and all that remained was for the parties to memorialize the agreement.

Following the status conference, however, Mr. Singh resumed his *pro se* motion activity by filing a motion to dismiss. In response, Columbia filed a motion to enforce the settlement that Columbia contended was reached during the conference. Without addressing the basis of its jurisdiction, the district court found that a valid and enforceable agreement had been reached and enjoined the Singhs from placing trailers that would impede Columbia's easement and from crossing the pipeline at places other than the approved crossovers. The Singhs appeal from this order.

There was no federal-question jurisdiction in this case under 28 U.S.C. § 1331 or § 1337 because the claims did not "arise under" federal law. Columbia suggests that

because it is regulated under federal law, it has the option to resolve its property disputes in federal court. Columbia does not assert a federal right of action under the Natural Gas Act or federal common law and must rely on the substantial-federal-question doctrine for the federal court to have jurisdiction over its state-law claim. An application of this circuit's test from *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (en banc), shows that federal-question jurisdiction does not exist to adjudicate this property dispute.

In assessing federal-question jurisdiction, the first question is what body of law creates the cause of action. Columbia's complaint is vague about what cause of action it is asserting. Although ¶ 28 of the Complaint suggests a state-law action for interference with easement, ¶ 29 suggests that the suit may be based on the Natural Gas Act, 15 U.S.C. §§ 717–717w. As described below, the action is best understood as a state-law cause of action because neither the Natural Gas Act nor federal common law can be the source of Columbia's cause of action.

There are two strong reasons that the Natural Gas Act cannot be the source of the cause of action: the Natural Gas Act does not provide Columbia with a general private right of action for alleged violations of the Act and, moreover, Columbia does not allege that the Singhs even violated the Natural Gas Act.

First, as other circuits have recognized, the Natural Gas Act does not create a general private right of action to counter violations of the Act. *See Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1148 (3d Cir. 1977). The Natural Gas Act contains a narrow, explicit private right of action and a broad right of action for the government. Section 717f(h) provides a holder of a certificate of public convenience and necessity with the right to bring an eminent-domain action in federal court. However, there are two limitations on this action: (1) the certificate holder must not have been able to acquire the right-of-way by contract or not be able to agree with the owner on the amount of compensation, and (2) the amount of compensation claimed by

the owner must be more than $3000. In contrast with these specific limitations on this narrow private action, the Natural Gas Act provides a broad right of action for the government. Section 717s(a) empowers the Federal Energy Regulatory Commission[1] to bring a federal action to enjoin "*any* acts or practices which constitute or will constitute" violations. 15 U.S.C. § 717s(a) (emphasis added). If Congress had intended for private actors such as Columbia to have broad enforcement powers under the Natural Gas Act, Congress could have easily given private actors such powers. Instead, Congress only provided private actors a narrow right to bring an eminent-domain action, a right which does not apply to this case because Columbia already owns the right-of-way and the dispute is over the scope of the easement, not the amount of compensation. *Cf. Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 556 (4th Cir. 1999) ("Columbia has *not* brought an eminent domain action, for understandable reasons. To do so would require, *a fortiori*, a concession by the gas company that it does not already own by express agreement the easement it claims it needs . . . .").

Second, even if a general private right of action did exist under the Natural Gas Act, Columbia has not alleged that the Singhs have violated the Act. Columbia alleged that the actions of the Singhs or their tenant would "impair *Columbia's duty* to provide service under the Natural Gas Act," Compl. ¶ 29 (emphasis added), but at no point does Columbia allege that the Natural Gas Act imposes any duty on the Singhs. If the Singhs do not have a statutory duty, then they cannot have violated the Natural Gas Act. While Columbia's complaint refers to the Natural Gas Act, at no point does it allege that the Singhs have violated the Act. The Singhs' duty to Columbia, if any, arises from the easement, not from the Natural Gas Act.

At one point in its complaint, Columbia says that its "action involves substantial federal questions arising under . . . federal common law." Compl. ¶ 7. It is conceivable, if not plausible, that some form of preemptive federal common law could be formulated

---

[1]When the Natural Gas Act was passed, the Commission was known as the Federal Power Commission, but in 1977 the Department of Energy Organization Act abolished the Federal Power Commission and transferred regulatory authority under the Natural Gas Act to the Federal Energy Regulation Commission. *See* Pub. L. No. 95-91, § 402(a)(1)(C)–(F), 2(B), 91 Stat. 565, 583–84 (1977).

to govern the scope of easements for interstate pipelines. However, at no point does Columbia suggest that its action is being brought under a theory creating a new common-law cause of action. This distinguishes this case from novel arguments for new federal causes of action that arise under federal law and are evaluated through Rule 12(b)(6). In *Bell v. Hood*, 327 U.S. 678, 680–81 (1946), the plaintiffs argued a theory—which was ultimately accepted twenty-five years later in *Bivens*—that federal officers should be subject to civil suit for violating the Constitution. Although no such cause of action existed at the time, the Supreme Court held that the federal court had subject-matter jurisdiction because the plaintiffs sought recovery directly under federal law. Here, Columbia does not clearly seek recovery under federal law; rather, Columbia's complaint is a state-law claim with a federal ingredient. Accordingly, Columbia's action cannot be understood as asserting a federal common-law claim and the court does not have subject-matter jurisdiction on that basis, even under the liberal standard of *Bell v. Hood*.

Therefore, neither the Natural Gas Act nor federal common law is the source of Columbia's cause of action. Columbia's complaint can only be understood as asserting a state-law claim for interference with easement.

Even if Columbia's claim is based upon Ohio law, the federal courts could still have jurisdiction if the case arises under federal law for purposes of 28 U.S.C. § 1331 or § 1337.[2] However, Columbia's claim is a typical state action without a substantial federal question and therefore does not arise under federal law.

Columbia argues that the Singhs' use of the property must be limited in accordance with federal regulations imposing duties upon Columbia in order for Columbia to comply with federal regulations. Columbia suggests at least one plausible

---

[2]Section 1337 provides, "[t]he district courts shall have original jurisdiction of any civil action or proceeding *arising under* any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . ." 28 U.S.C. § 1337(a) (emphasis added). "Arising under" for purposes of § 1337 commerce-clause jurisdiction is interpreted the same as "arising under" for purposes of § 1331 federal-question jurisdiction. *Mich. Sav. & Loan League v. Francis*, 683 F.2d 957, 960 n.6 (6th Cir. 1982) (citing *Maritime Serv. Corp. v. Sweet Brokerage de Puerto Rico, Inc.*, 537 F.2d 560, 561 n.1 (1st Cir. 1976)).

scenario in which the Singhs could put Columbia in violation of federal regulations.  If the Singhs graded the property and left less than three feet of cover, then Columbia could be in violation of a broad reading of 49 C.F.R. § 192.327, which requires that transmission lines be installed with specific minimum depths of cover.   However, because the Singhs' duty to Columbia flows from the easement, Columbia must connect the federal regulations to Ohio law governing the relationship between the dominant and servient estates for the Singhs to be liable for grading the land.

Under Ohio law, when the scope of an easement is undefined by the document creating the interest,  the grantee "is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude." *Guitierrez v. Rodriguez*, No. 97048, 2012 WL 1379832, at \*2 (Ohio Ct. App. Apr. 19, 2012) (quoting *Restatement (Third) of Property:  Servitudes* § 4.10).  In effect, Columbia argues that Ohio's reasonableness inquiry for the scope of Columbia's easement may look to federal law and that this provides the substantial federal element required for "arising under" jurisdiction.

In *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007), this court, sitting en banc, understood the most recent Supreme Court case finding substantial-federal-question jurisdiction to establish a three-part test:  "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities."  *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

An application of this test to Columbia's claim shows that a substantial federal question does not exist.  First, although it is difficult to gauge whether a federal issue is disputed from the Complaint, it is clear with the benefit of briefing that there is no dispute over the interpretation of the federal law regulating natural gas carriers or pipelines.  The Singhs do not argue, for example, that they should be able to grade their land in a way that would bring the pipeline within three feet of the surface because the

regulation is invalid.  The present case can be contrasted with *Mikulski*.  In *Mikulski*, shareholders alleged fraudulent misrepresentation and breach of contract because the corporation's interpretation of a federal tax provision was incorrect in the plaintiffs' view.  If the corporation's interpretation of the tax provision was correct, the plaintiffs' claim would fail.  Accordingly, the parties "crossed swords" over the proper interpretation of the tax code.  501 F.3d at 570 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 512 (2006)).  Here, the original merits disagreement is over the terms of the easement, and the current merits disagreement is whether an enforceable settlement was reached, not over the effect of federal standards on the Singhs' use of the land.  Further, as the Fourth Circuit recognized in *Drain*, Ohio law does not necessarily look to federal law to determine the scope of an undefined pipeline right-of-way.  In determining the "reasonably necessary" scope of a pipeline easement, Ohio law considers "federal regulations merely as one of a number of factors or, in some cases, not at all."  *Drain*, 191 F.3d at 558 (citing *Roebuck v. Columbia Gas Transmission Corp.*, 386 N.E.2d 1363 (Ohio Ct. App. 1977); *Columbia Gas Transmission Corp. v. Adams*, 646 N.E.2d 923 (Ohio Ct. Com. Pl. 1994); *Columbia Gas Transmission Corp. v. Large*, 619 N.E.2d 1215 (Ohio Ct. Com. Pl. 1992)).

Second, the federal interest in this case is not substantial.  Four factors go into the substantiality inquiry:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski,* 501 F.3d at 570.

These factors point away from a substantial federal interest in this case.  The first and third factors are objective and both point away from a substantial federal interest.  A federal agency is not involved, and because there is no dispute about a federal question, it follows that the federal issue will not resolve the case.  The second and

fourth factors are more subjective, but these factors ultimately point away from a substantial federal interest. While there is a federal interest in the safe transmission of natural gas, the scope of easements is a typical state-law property issue and there is no allegation that the courts of Ohio or any other state are not enforcing the property rights of natural gas companies or are otherwise impeding the safe transmission of natural gas in a way that would call for a federal forum for nondiverse parties. In addition, unless the federal courts were to create a uniform, bright-line standard for the scope of pipeline easements—a standard that would likely constitute a large shift in the rights between burdened and benefited estates across the country—it is hard to imagine how the resolution of any federal issue in this case would control numerous other cases. The proper resolution of the scope of a pipeline easement is a fact-bound inquiry that looks at the specific context of the land. State courts are better equipped for this type of local inquiry and the federal interest in this case is not substantial enough to justify federal-question jurisdiction.

Third, allowing for federal jurisdiction over nondiverse disputes related to pipeline rights-of-way could disrupt the congressionally approved balance of federal and state judicial responsibilities. We do not have information about the number of analogous easement disputes that could be filed in federal courts, so any prediction regarding the effect on filings in the federal courts would be speculative. It is fair to predict though, especially with the recent increase in natural gas production, consumption, and transportation, that opening the federal courts to disputes over the scope of unspecified rights-of-way could lead to a large number of cases. The number of pipeline-easement cases that would be filed in federal rather than state court is certainly more than the "microscopic effect" that the Supreme Court expected from the quiet title action in *Grable*, 545 U.S. at 315, or the solitary constitutional case approved of in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201–02 (1921).

In summary, Columbia's claim fails each part of the substantial-federal-question jurisdiction test, and accordingly, the district court did not have subject-matter jurisdiction.

None of the remaining bases upon which Columbia relies is convincing.  In its brief, Columbia says that its claim "arises under Section 22 of the Natural Gas Act," Br. of Columbia, 36, and that the Natural Gas Act, 15 U.S.C. §§ 717–717w, vests the federal courts with exclusive jurisdiction "over claims like this one."  Br. of Columbia, 31.  The argument however does not adequately distinguish between statutes that create jurisdiction without a cause of action and federal-question jurisdiction.  Section 22 of the Natural Gas Act, codified at 15 U.S.C. § 717u, provides:

> The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. . . . Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in [a proper district court].

15 U.S.C. § 717u.  Columbia characterizes the current suit as one brought to enforce such a duty created by the Natural Gas Act, and therefore, within the exclusive jurisdiction of the federal courts.

While a cursory reading of this provision might suggest that federal jurisdiction should exist for alleged violations of the Natural Gas Act—even assuming for the sake of argument that Columbia alleges such a violation—this provision does not create the cause of action or substantial federal interest required for federal-question jurisdiction. In *Pan American Petroleum Corp. v. Superior Court of Delaware for New Castle County*, 366 U.S. 656, 662–64 (1961), the Supreme Court clarified that § 717u does not create jurisdiction beyond standard federal "arising under" jurisdiction.  As Justice Frankfurter stated, "[e]xclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded." *Id.* at 664.  As discussed above, Columbia's interference-with-easement claim does not arise under federal law as required by 28 U.S.C. § 1331 or § 1337.  Therefore, 18 U.S.C. § 717u does not provide Columbia with access to a federal forum.

Section 717u provides for federal jurisdiction, but it does not create an action. The Supreme Court has considered parallel jurisdictional statutes and concluded that they are not sufficient to convey congressional intent to create a private right of action. For example, § 27 of the Securities Act of 1934, 15 U.S.C. § 78aa, contains parallel language to 18 U.S.C. § 717u. Yet, since *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), the Court has declined to understand this jurisdictional grant as creating causes of action. For instance, in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979), the Supreme Court explained that "Section 27 grants jurisdiction to the federal courts and provides for venue and service of process. It creates no cause of action of its own force and effect; it imposes no liabilities."

Columbia cites a 1978 decision of this court, *City of Cleveland v. Cleveland Electric Illuminating Co.*, 570 F.2d 123, 128 (6th Cir. 1978). Although it is not clear what proposition Columbia asserts *Cleveland* is good law for, *Cleveland* does not change our conclusion. *Cleveland* considered a claim brought by an electric company against its customer, the City of Cleveland, as a counterclaim to an antitrust suit. In violation of a contract that the Federal Power Commission ordered the city to enter into, the city had not been paying the electric company. In response, the electric company filed motions with the Commission, and the Commission entered further orders directing the city to pay the electric company. When the electric company asserted its claim for payment in federal court as a counterclaim to an antitrust suit, the city argued that the federal court did not have subject-matter jurisdiction over what it considered a contract claim. We held first that there was ancillary jurisdiction to the antitrust suit. In the alternative, we relied upon the Federal Power Act's parallel jurisdictional provision, 16 U.S.C. § 825p, and said that the counterclaim was meant to enforce an order of the Commission rather than a state-law contract claim. *See* 570 F.2d at 128. Columbia appears to suggest that just as the federal court had subject-matter jurisdiction to entertain a private party's enforcement of a Federal Power Commission order, the federal courts have jurisdiction to entertain Columbia's allegation that the Singhs' activities on the property exceed their rights and could affect Columbia's duties under federal law.

The alternative holding in *Cleveland* is distinguishable.  In *Cleveland*, the Federal Power Commission "ordered the City to enter into the contract."  570 F.2d at 128.  The *Cleveland* case suggests that the electric company's action was better understood as a federal action to enforce the Commission's order as opposed to a state-law contract action.  Columbia's action, on the other hand,  can only be understood as a state-law property action.

The district court cases that Columbia cites are not persuasive.  Columbia's strongest case, *Columbia Gas Transmission Corp. v. Burke*, 768 F. Supp. 1167 (N.D. W. Va. 1990), is analytically flawed.  In *Burke*, the district court decided that federal courts have exclusive jurisdiction over disputes brought via § 717u concerning the scope of existing easements.  The *Burke* opinion displays confusion about the relationship between § 717u and "arising under" jurisdiction but bases jurisdiction upon three considerations:  (1) determining the location of a right-of-way is a "necessary extension" of the Natural Gas Act's eminent-domain provision, § 717f(h); (2) a landowner's activity may increase the probability of an unexpected gas shutoff and thus interfere with Columbia's duty under § 717f to obtain permission from the government before any service shutoffs; and (3) a landowner's refusal to allow Columbia to inspect its pipeline could interfere with Columbia's duty under § 717i to estimate the cost of maintenance and operation of the pipeline.  *See* 768 F. Supp. at 1170–71.

None of *Burke*'s rationales is convincing.  Regarding the first rationale, it is not necessary to provide a federal forum to hear disputes over existing easements to effectuate the eminent-domain provision's concern about the creation of new easements. Congress only created a cause of action for the creation of new easements, and an expansion of this cause of action raises separation-of-powers concerns.  *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).  Congress created a provision that allows gas companies to go to federal court to determine the amount of compensation for the creation of a new easement when a gas company cannot come to an agreement with a landowner who seeks more than $3000.  The question of the scope of a preexisting easement is an entirely different question.  The second and third rationales share a flaw;

they both assume that because Columbia has a duty under federal law that it must have a federal forum to enjoin others' activities that could affect its duty. Adopting this assumption would broaden the penumbra of federal law too far. By the same rationale, one might argue that because airplane pilots will soon be required to have had an uninterrupted, eight-hour opportunity to sleep, *see* Flightcrew Member Duty and Rest Requirements, 77 Fed. Reg. 330, 401 (Jan. 4, 2012) (to be codified at 14 C.F.R. pt. 117.25(e)), that an Ohio airline might go to federal court to bring an Ohio nuisance action against a pilot's Ohio neighbor who interrupts the pilot's sleep. Despite the federal interest in safe air travel, noisy neighbors can only be haled into state court. If natural gas companies could go to federal court for any dispute that could result in a shutoff of natural gas service, then gas companies could nearly always opt for the federal forum. As the Supreme Court held in *Pan American*, the Natural Gas Act does not give natural gas companies this flexibility, and state courts can be proper forums for disputes affecting natural gas service. *See Pan Am. Petroleum Corp.*, 366 U.S. at 663 ("The rights as asserted . . . are traditional common-law claims. They do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas.").

The other district court cases that Columbia cites limit their brief discussions of federal-question jurisdiction to nonpersuasive dicta. *See Columbia Gas Transmission, L.L.C. v. Robert Borror Logging L.L.C.*, No. 2:12-CV-39, 2012 WL 2294870, at *2 (N.D. W. Va. June 15, 2012), *Columbia Gas Transmission Corp. v. Davis*, 33 F. Supp. 2d 640, 641 (S.D. Ohio 1998); *Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F. Supp. 180, 184 n.2 (S.D. Ohio 1992).

In summary, none of the authorities that Columbia cites overcomes Columbia's failure to assert either a federal cause of action or a state-law claim with a substantial federal interest. Therefore, federal-question jurisdiction did not exist over Columbia's claim.

The judgment of the district court is reversed for lack of district court jurisdiction.